IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAL SUNDIATA SCOTT, | : | CIVIL ACTION NO. **1:CV-05-1574** |
| Plaintiff | : | (Judge Kane) |
| v. | : | (Magistrate Judge Blewitt) |
| DONALD VAUGHN, et al., | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Background.**

On August 13, 2004, Plaintiff, currently an inmate at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"), filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] Plaintiff is proceeding *pro se*. Plaintiff was granted leave to proceed *in forma pauperis*. Plaintiff alleges that when he was incarcerated at SCI-Graterford, he was improperly confined in administrative custody ("AC") and then, as additional punishment, he was transferred to SCI-Huntingdon. Plaintiff avers that both prisons deprived him of his basic medical and dental care. Plaintiff further claims that SCI-Huntingdon 'promotes homosexuality and suppresses true Islam". (Doc. 1, p. 4). This Court has jurisdiction over this § 1983 civil rights action pursuant to 28 U.S.C. § 1343 (a).

---

[1] The Plaintiff originally filed his action in the Eastern District of Pennsylvania, but it was transferred to this Court on August 5, 2005. This case was originally assigned to Magistrate Judge Smyser for pre-trial matters, but was re-assigned to the undersigned on November 23, 2005. *See* 28 U.S.C. § 636(b).

Plaintiff filed two Motions for Preliminary Injunction or TRO. The second was filed on August 12, 2005. (Doc. 7).[2] On March 2, 2006, the Court denied Plaintiff's Injunction Motion. (Doc. 27). Defendants field their Answer to the Complaint on May 1, 2006. (Doc. 30). Defendants also filed a Summary Judgment Motion on May 1, 2006, and a support Brief. Defendants have filed a Statement of Undisputed Material Facts ("SMF") as required by Local Rule 56.1, M.D. Pa., on May 3, 2006. (Docs. 31, 32 & 33). Plaintiff filed his response Brief on May 16, 2006. Plaintiff did not file a numbered response to Defendants' SMF as required by Local Rule 56.1, M.D. Pa. Defendants' Summary Judgment Motion has been briefed and is ripe for disposition.

## II. Motion for Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id.*

---

[2]The Court deemed Plaintiff's first Preliminary Injunction/TRO Motion as withdrawn. (Doc. 8).

The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

## III. Allegations of Complaint.

Plaintiff alleges as follows:

> Graterford wrongfully placed me on administrative custody and transferred me to SCI Huntingdon for further punishment. Graterford failed my basic medical and dental needs and Huntingdon continued where Graterford left off. Huntingdon Prison promotes homosexuality and suppresses true Islam while they along with Graterford and Camp Hill hire Wahabiggs that teach and propagate the brand of Religion Osama bin Laden teaches and propagates. The people Graterford, Camp Hill, and Huntingdon hire went to the same college as Osama bin Laden. Through deplorable conditions and ill treatment I suffered from a nervous breakdown.

(Doc. 1, p. 4).

Plaintiff names as Defendants: Donald Vaughn, Superintendent at SCI-Graterford; David Diglugielmo, Deputy Superintendent at SCI-Graterford; Pennsylvania Department of Corrections ("PA DOC") Secretary Jeffrey Beard; Superintendent at SCI-Huntingdon James Grace; and SCI-Huntingdon Counselor W. Cummins. (Doc. 1, p. 1).

3

To establish a claim under Section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. This criteria is met here, since the Defendants are employed by the PA DOC, and two (2) Defendants are employed at SCI-Graterford and two (2) Defendants are employed at SCI-Huntingdon. The second criteria requires that the conduct must deprive the complainant of rights secured under the Constitution or federal law. *Sameric Corp. of Delaware, Inc. v. city of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998); *Parratt v. Taylor*, 451 U.S. 527 (1981). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[3] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

**IV. Discussion.**

As mentioned, Defendants have filed their SMF in support of their Summary Judgment Motion as required. (Doc. 33). *See* Local Rule 56.1, M.D. Pa. Plaintiff has not properly responded to Defendants' SMF. Thus, pursuant to Local Rule 56.1, we shall deem ¶'s 6.-8. of Defendants' SMF as admitted by Plaintiff, since the facts stated therein are not controverted by Plaintiff. We shall not reiterate Defendants' SMF, and we incorporate herein by reference the facts (*i.e.* ¶'s 6.-8.) contained

---

[3]Plaintiff alleged in his pleading that Defendants were all employees of the PA DOC. All but Defendant Beard were employees at SCI-Graterford or SCI-Huntingdon. Thus, all Defendants were acting under color of state law. (Doc. 1, p. 1). In their SMF, Defendants admit that they were all employees of the DOC during the relevant times of this case. (Doc. 33). Thus, it is undisputed that Defendants were state agents.

in it. (Doc. 33).[4]

Thus, we find that Plaintiff has failed to properly respond to Defendants' SMF as required by Local Rule 56.1 of M.D. Pa. (Doc. 33). Defendants have offered evidentiary support for their factual paragraphs, ¶'s 6.-8., contained in their SMF. (Doc. 32, Exs. A-E). Therefore, we accept the facts contained in ¶'s 6.-8. of Defendants' SMF as uncontroverted, and we incorporate them herein by reference. *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record). As in the *Paranich* case, our Plaintiff did not respond to Defendants' SMF as required by L.R. 56.1, and we also adopt all of the facts in Defendants' SMF, ¶'s 6.-8., since they are not controverted by Plaintiff in a response with citation to evidence.[5] Defendants' remaining paragraphs in their SMF rely upon admissions made by Plaintiff in his Complaint, ¶'s 1.-5., 9., 10., 12., 13., Doc. 33. However, these paragraphs are not facts supported by evidence, and as such they should not have been included

---

[4]The material undisputed facts contained in the Defendants' SMF, ¶'s 6.-8. (Doc. 33) are supported by the evidence Defendants have submitted (Doc. 23, Exs. A-E). Since the Plaintiff has failed to respond to them, we shall adopt them as our own. Further, Plaintiff has not submitted any evidence in opposition to Defendants' Summary Judgment Motion. Doc. 36. Thus, we accept ¶'s 6.-8. of Defendants' SMF's as supported by evidence, since Plaintiff has failed to controvert them in a response to Defendants' SMF. *See* Local Rule 56.1, M.D. Pa. Defendants' remaining SMF's rely upon admissions made by Plaintiff in his Compliant, ¶'s 1.-5., 9., 10., 12., 13., Doc. 33. However, these paragraphs are not facts supported by evidence, and thus, we do not incorporate them herein by reference.
  We note that Plaintiff's Complaint had several exhibits attached to it, including Inmate Request to Staff Forms, and Plaintiff's grievances along with responses. Defendants' exhibits attached to their Brief, Doc. 32, are derived from Plaintiff's exhibits. (Doc. 32, p. 5, n. 1).

[5]*See also Paranich* District Court case at 286 F. Supp. 2d at 447, n. 3.

in Defendants' SMF unless Defendants referenced evidence to support each one of them.

As their second argument, Defendants state that they are entitled to summary judgment since Plaintiff did not exhaust his Administrative remedies. (Doc. 32, p. 8).[6] We are not satisfied with all of the Defendants' SMF, Doc. 33, which states that Plaintiff has not exhausted his Administrative remedies under DC-ADM 804. Defendants simply refer to Plaintiff's Complaint as an admission that he has not exhausted his Administrative remedies. (Doc. 33, ¶ 11. & Doc. 32, pp. 8-9). However, in his Complaint, Plaintiff states that he did not exhaust his Administrative remedies with respect to one of his claims. (Doc. 1, p. 3). Plaintiff states that with respect to his other grievances, he has exhausted them to final review, and that one was "wrongly dismissed on final review." (*Id.*). Plaintiff's exhibits attached to his Complaint appear to indicate that some of his grievances were appealed and may have been exhausted. In his Brief, Plaintiff states that with respect to one of his grievances, prison officials refused to process it. (Doc. 36, p. 2). Defendants did not attach an affidavit or declaration of the DOC official who has responsibility for tracking grievances and who could attest as to which, if any, of Plaintiff's present claims were exhausted, and which ones were not. In any event, we find Defendants' SMF and Brief as to the exhaustion issue inadequate for summary judgment purposes.

---

[6]It is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. *Id.* at 230. In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*; *Woodford v. Ngo,* 126 S. Ct. 2378 (2006). Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

As this Court in *Fortune v. Bitner*, 2006 WL 2796158, * 7 (M.D. Pa.), stated, "failure to exhaust available Administrative remedies is an affirmative defense. As such, it must be pleaded and <u>proven</u> by the Defendants."(citations omitted) (emphasis added).  In our case, we find that Defendants have pled Plaintiff's failure to exhaust, but Defendants have not met their burden of proving Plaintiff's failure to exhaust each and every one of his claims.  Thus, we find that Defendants have not met their present burden as to their exhaustion argument raised in their Brief.

Defendants initially argue that Plaintiff has failed to state a cognizable claim under § 1983. (Doc. 32, pp. 4-7). We concur with Defendants that Plaintiff's claim that he was "wrongfully placed" in AC while at SCI-Graterford, and that he was transferred to SCI-Huntingdon "for further punishment" do not constitute viable § 1983 claims.  (Doc. 1, p. 4).  Plaintiff states in his Brief that he used the word "wrongful" in his pleading to mean "deprivation of due process."  (Doc. 36, p. 1). Plaintiff also states that he has been in the RHU for 1,280 days.  (*Id.*).

The parties do not dispute that Plaintiff was placed in AC while incarcerated at SCI-Graterford, and again when he was transferred to SCI-Huntingdon.  Plaintiff filed several Inmate Requests to Staff Forms , Form DC-135A, while in the stated prisons.  He also filed grievances. *See* Doc. 1, Att. Exhibits and Doc. 32, Exs. A-E.[7]  Defendants have attached to their Brief Plaintiff's Inmate Request to Staff Forms, Form DC-135A, regarding his requests for medical care.  Plaintiff has attached to his Complaint various Inmate Request to Staff Forms, Form DC-135A, and grievances he filed.  Plaintiff filed Inmate Request to Staff Forms, Form DC-135A, on January 13, 2004, June

---

[7]As we indicated, Defendants note that their exhibits were taken from the exhibits submitted by Plaintiff.  Doc. 32, p. 5, n. 1.

5, 2004, and on August 2, 2004, indicating that he was in the RHU for over one year since January 2004, that he requested to be released to general population, and that he was on AC status when he arrived at SCI-Graterford. These exhibits indicate that Plaintiff was told to take a cell mate and he would be released from the R.H.U. (Doc. 1, Ex. At pp. 8, 26-27).[8] In his Request Forms, Plaintiff seemed to ask when he would be let out of AC. In the response to Plaintiff's August 2, 2004 Request, the staff member states that Plaintiff was being reviewed for single cell status, and that he had DC sanctions against him which required his restricted housing until December 26, 2004. (*Id*.). Plaintiff also filed a Request on July 24, 2004 about being "Z coded." (Doc.1, att. Ex., p. 14). Plaintiff had previously filed a grievance about being Z coded, and his grievance was denied since he was told that he did not meet the criteria for Z Code. (*Id*., p. 6).

We agree with Defendants (Doc. 32, p. 5), that Plaintiff has not alleged that he had a "protected liberty interest" that was infringed by the Defendants' actions and his placement in AC. "[T]hese interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to the Due Process Clause of its own force..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "[T]he baseline for determining what is 'atypical and significant'--the 'ordinary incidents of prison life'--is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his conviction in

---

[8]Plaintiff's exhibits attached to his Complaint were not marked, but they have page numbers on their tops when they were filed on August 5, 2005 with this Court. Thus, we refer to the typed page numbers on Plaintiff's exhibits.

accordance with due process of law." *Griffin v. Vaughan*, 112 F.3d 703, 706 (3d Cir. 1997) *quoting Sandin*, 515 U.S. at 486.

Plaintiff simply avers that he has been wrongfully placed in AC at both prisons. (Doc. 1, p. 4). His exhibits show that he filed Inmate Request Forms about being released into general population and about his custody status, which in part caused him to lose some of his prison privileges. In his Brief, Plaintiff states that when he arrived at SCI-Huntingdon on June 17, 2003, he had no misconducts against him for ten months, and that he was told by his unit manager that he was placed on the restricted release list due to his attempted escape at SCI-Graterford. (Doc. 36, pp. 1-2).

In *Griffin*, the Court found that confinement of a prisoner in restrictive housing for fifteen (15) months did not implicate a constitutionally protected liberty interest. Based on *Sandin* and *Griffin*, the Plaintiff's Complaint as against Defendants fails to state a claim, since his AC status did not give rise to a protected liberty interest. In particular, the Plaintiff's claim that he is being kept in the RHU at SCI-Huntingdon since June 2003, does not give rise to a protected liberty interest. See *Sandin* and *Griffin*. Further, no liberty interest is implicated by the Plaintiff because he had no right to a particular prison classification, *i.e.* AC status versus general population classification. Nor did Plaintiff have a right to be "Z coded." It is well-settled that an inmate has no recognizable constitutional right to a particular custody status. *See Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997). Also, to the extent that Plaintiff avers that his continued classification as AC status and his confinement in the restricted housing unit for over two years caused him to be deprived of privileges afforded to inmates in general population, such as having to strip in front of others, as well

as having to use the bathroom and shower in the presence of others, and lack of visitation rights, Doc. 36, p. 2, these allegations do not state a § 1983 claim.[9]

We also find that the Plaintiff is requesting relief in the form of Court intervention and management while he is in prison, *i.e.* a change in his custody status level and/or security housing level in the prison.   The Court will not generally interfere with prison administration matters such as the prison's decision to place Plaintiff in a particular security level, *i.e.* AC status.  The Court should give significant deference to judgments of prison officials regarding prison regulations and prison administration.  *See Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002).[10]  In the present case, Plaintiff's continued housing in AC after his transfer to SCI-Huntingdon was the result of his attempted escape at his former prison, SCI-Graterford, and his AC status was extended due to his misconduct finding of guilt.  Under these circumstances, we agree with Defendants that Plaintiff's

---

[9] Plaintiff has not implicated a liberty interest with respect to any claim that he is not able to participate in any programs due to his RHU confinement.  "The control of prison educational and rehabilitation programs is a matter of prison administration and does not rise to the level of a federal claim in most instances." *Coffey v. Ingram*, WL 82855, *1 (E.D. Pa. 1988) (Citing *Hayes v. Cuyler*, 475 F.Supp. 1347, 1350 ( E.D. Pa. 1979).   The Plaintiff had no right to participation in any  prison programs such as the BMP Program and, thus, his denial of participation in them does not amount to a constitutional violation.   (Doc. 1, June 5, 2004 Inmate Request to Staff Member Exhibit).

[10] We also find that Plaintiff's claim that he was wrongfully placed in AC may be *Heck*-barred, insofar as his confinement was due, at least in part, to DC sanctions issued against him from a misconduct report. Plaintiff must first successfully challenge his DHO guilty finding, which caused his AC time to be extended, *via* a § 2241 habeas petition.  Plaintiff's claims against the Defendants may be barred by *Heck,* which precludes a §1983 claim challenging a Plaintiff's conviction.  As the Third Circuit stated, "[u]nder *Heck*, a § 1983 action that impugns the validity of the Plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." *Gilles v. Davis*, C.A. No. 04-2542, (3d Cir. 10-25-05), slip op. 21; *Poole v. D.O.C.*, 153 Fed. Appx. 816, 818 (3d Cir. 2005)(Non-Precedential)(Per Curiam).

10

claim that his continued AC status violates his due process rights, fails to establish a viable § 1983 claim.[11]

Defendants argue that Plaintiff's clams that both SCI-Graterford and SCI-Huntingdon "failed my basic medical and dental needs" are not actionable under § 1983 since his very own exhibits show that he received medical attention for his conditions. (Doc. 32, pp. 5-6). Defendants point to Plaintiff's own exhibits, which they have attached to their Brief as Exs. A-E, and argue that they show Plaintiff received a variety of medical, dental and psychological treatment. (*Id*.).

Plaintiff argues that the exhibits attached to Defendants' Brief do not show that he received proper medical care, and that they do not show he always failed to pursue his opportunities for care. (Doc. 36, p. 3).

We have reviewed Defendants' exhibits attached to their Brief, and agree with Defendants that they do not show that any prison official has been deliberately indifferent to a serious medical need of Plaintiff.

As this Court recently stated in *Anderson v. BOP*, 2005 WL 2314306 (M.D. Pa. 2005), *7:

> The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999)(*citing Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). To establish a medical claim based on the Eighth Amendment, an inmate must allege (1) acts or omissions by prison

---

[11] In his August 12, 2005, Declaration in Support of Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 6), Plaintiff averred that on June 17, 2003, while he was at SCI-Huntingdon, prison staff told him that he would be released to general population if he took a cell mate. Plaintiff claimed that a unit manger told him he would be released from the Restrictive Housing Unit ("RHU") in two weeks, but that he was not. However, Plaintiff averred that staff determined that he would pose an escape risk in a less secure housing unit. (*Id.*, pp. 2-3).

11

officials sufficiently harmful (2) to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir.2004); *Natale v. Camden County Corr. Facility,* 318 F.3d 575, 582 (3d Cir.2003). The inmate must satisfy this two-part, conjunctive test. Without the requisite mental state, a prison official's conduct alone will not constitute deliberate indifference. *See Farmer v. Brennan,* 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In the context of prison medical care, the Eighth Amendment can be violated by the deliberate indifference of: (1) prison doctors in their response to the prisoner's needs; (2) prison guards intentionally denying or delaying access to medical care; or (3) prison staff intentionally interfering with medical treatment once it is prescribed. *Estelle v. Gamble,* 429 U.S. 97, 104--105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). However, if a prisoner is under the care of a medical experts, a non-medical prison official cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner...." *Spruill,* 372 F.3d at 236; *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993) (prison personnel who are not physicians cannot be considered deliberately indifferent for failing to respond to an inmate's medical needs when the inmate is already receiving treatment from the prison's medical staff).

To be deliberately indifferent, a prison official must know of, and disregard, an excessive risk to inmate health or safety. *Farmer, supra,* 511 U.S. at 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment...." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.,* 429 U.S. at 107, 97 S.Ct. at 293. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg,* 903 F.2d 274, 278 (3d Cir.1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napoleon,* 897 F.2d 103, 110 (3d Cir.1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a

§ 1983 cause of action, and an inmate's disagreement with medical
treatment is insufficient to establish deliberate indifference. *See Durmer v.
O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993).

In our case, the four (4) supervisory Defendants, including Vaughn, Diguglielmo, Grace and Counselor Cummins, are not physicians, physician assistants, or nurses. Nor is Defendant Beard. Plaintiff's own exhibits show that he was being provided with care by the prison doctors. Further, Plaintiff does not state the personal involvement of any of our Defendants with respect to his Eighth Amendment claim. Thus, Plaintiff fails to state an Eighth Amendment claim against all of the stated Defendants. *See Anderson* at *8.[12]

Finally, Plaintiff claims that "Huntingdon prison promotes homosexuality and suppresses true Islam" and that the prisons in which he has been incarcerated "hire Wahabiggs that teach and propagate the brand of religion Osama bin Laden teaches and propagates." (Doc. 1, p. 4). Plaintiff also avers that the staff hired by the prisons "went to the same college as Osama bin Laden." (*Id*.). Once again, Plaintiff fails to state the personal involvement of any of the Defendants with respect to his stated First Amendment claim. Further, as Defendants argue (Doc. 32, p. 6), Plaintiff does not even state that any officials at any of the prisons where Plaintiff has been confined, had any knowledge of or acquiesced in any conduct that failed to prevent or that condoned homosexual behavior by the inmates. Nor does Plaintiff even state that the Defendants in this case deprived him

---

[12]As we found in our Report and Recommendation (Doc. 20) in which we recommended the denial of Plaintiff's Injunction Motion, Plaintiff's evidence did not show that he was denied medical care, but that he was on a waiting list for his cavities and that he was told to sign up for sick call for his allergies and for dental screening, which he had not done as of March 2, 2005. (Doc. 7, Ex. C).

of his First Amendment right to practice his religion. Rather, Plaintiff states that the prison "suppresses true Islam," and that they hire people who teach Osama bin Laden's brand of religion.

In his Brief, Plaintiff argues that the prisons hire personnel as instructors who graduated from bin Laden's university, and that they promote bin Laden's brand of Islam known as "Wahabigg," and he does not consider their beliefs as Muslim. (Doc. 36, pp. 2-3). Plaintiff concludes that the prison Administration shows favor to the disbelieving Islam sect, in violation of the First Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.* (*Id*.).[13]

Plaintiff does not state that any Defendant in this case was personally involved in hiring staff that promoted bin Laden's brand of Islam known as "Wahabigg." Plaintiff does not state that any Defendant in this case deprived him of his right to practice the religion of his choice. Plaintiff argues in his Brief that at SCI-Huntingdon, he is prohibited from purchasing religious material in the RHU, and that he is denied phone access to call "a spiritual advisor(s)". (Doc. 36, p. 2). Plaintiff also states that he is forced to cell with other inmates "irregardless of other mans (sic) inclinations." (*Id*.). Plaintiff does not claim that his religious beliefs prohibit him from being celled with someone who

---

[13]In the case of *Williams v. Bitner*, 285 F. Supp. 2d 593, (M.D. Pa. 2003), this Court found RLUIPA was constitutional. *See also Cutter v. Wilkinson*, 544 U.S. 709 (2005) (Supreme Court held that RLUIPA did not infringe the Establishment Clause.
In *Scott v. Beard*, 2006 WL 2645150 (M.D. Pa.), * 3, n. 2, this Court stated:

> 42 U.S.C. § 2000cc-1(a)(1)-(2), provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means."

does not follow his religion. Nor does Plaintiff claim that the Defendants intentionally celled him with other inmates who would prevent or interfere with Plaintiff's practice of his religion. Thus, we do not find that Plaintiff states a claim that his rights under the First Amendment were violated by the Defendants.

In *Nusbaum v. Terrangi*, 210 F. Supp. 2d 784, 787 (E.D. VA 2002), the Court stated "[t]he Establishment Clause provides that 'Congress shall make no law respecting an establishment of religion ....' U.S. Const. Amend. I. It applies to state governments through the Fourteenth Amendment." citing *Board of Educ. v. Grument*, 512 U.S. 687, 690 (1994).[14]

As this Court in *Williams v. Bitner*, 285 F.Supp. 2d 593, 600 (M.D. Pa. 2003), stated:

> In assessing whether a government action violates the prohibition against any "law respecting an establishment of religion," courts apply the three-prong test articulated in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). *See Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 334, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987); *Am. Civil Liberties Union of N.J. v. Schundler*, 104 F.3d 14335, 1440 (3d Cir. 1997). The *Lemon* test requires that government actions (1) have "a secular legislative purpose," (2) have a "principal or primary effect" that "neither advances nor inhibits religion," and (3) do not "foster excessive government entanglement with religion." *Lemon*, 403 U.S. at 612-13, 91 S.Ct. 2105 (internal quotation marks and citations omitted).

We agree with Defendants that Plaintiff is being allowed to practice his type of religion, but he objects to the type of Islam which is promoted by the personnel hired by the prison

---

[14] The Court in *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 528 (E.D. Pa. 2002), stated that "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."*O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citation, punctuation omitted).

Administration. Clearly, the government may not support a particular viewpoint and "violations of this prohibition generally occur when government provides subsidies for a particular cause." *Id*. at 601 (citations omitted). On the contrary, "actions that limit interference with religious practice clearly do not 'entangle' government with religion." *Id*. (citation omitted). In our case, Plaintiff does not allege that any Defendant interfered with his religious practice at any time. He does not claim that any Defendant prevented him from purchasing religious material at SCI-Huntingdon. (Doc. 36, p. 2). Thus, we do not find that Plaintiff has stated a First Amendment and Fourteenth Amendment claim against any Defendant. Nor do we find that Plaintiff has stated a claim under RLUIPA against any Defendant.

In *Lee v. Weisman*, 505 U.S. 577, 587 (1992), the Supreme Court, in considering the minimum requirements of the Establishment Clause, stated:

> "It is beyond dispute that, at minimum, the
> Constitution guarantees that government may not coerce anyone
> to support or participate in religion or its exercise, or otherwise act
> in a way which 'establishes a [state] religion or religious faith, or
> tends to do so.'" (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678
> (1984) (court found that a high school commencement ceremony
> which included a prayer violated the Establishment Clause
> since students were psychologically coerced to attend the ceremony).

In the instant case, Plaintiff does not claim that he is being forced to participate in a type of Islam to which he refers as "Wahabigg." Rather, he claims that the prisons have hired instructors who practice this brand of Islam. (Doc. 36, pp. 2-3). He therefore claims that the prison Administration has shown favoritism towards this type of Islam in violation of the Constitution. Once again, Plaintiff does not claim that he is not allowed to practice his type of Islam despite his claims that he is not allowed to buy religious materials in the RHU, and that he is denied phone

16

access to call a spiritual advisor. (*Id.*, p. 2). In any event, Plaintiff does not state the personal involvement of any Defendant with respect to the conduct of the prison Administration in hiring "Wahabiggs" religious instructors. Nor does the DOC have a duty to afford Plaintiff with a the clergy person or instructor of the type of Islam that he practices. *See Allah v. Al-Hafeez*, 208 F. supp. 2d 520, 531 (E.D. Pa. 2002)(citations omitted); *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972)(each religious sect in a prison is not required to have the same facilities or personnel). Plaintiff does not claim that he did not have an opportunity to worship the type of Islam which he practiced. We agree with Defendants that Plaintiff has not stated a First Amendment and Fourteenth Amendment free exercise of religion claim.

## V.   Recommendation.

Based on the foregoing, it is respectfully recommended that Defendants' Motion for Summary Judgment **(Doc. 31)** be granted. It is further recommended that Judgment be entered in favor of the Defendants and against the Plaintiff.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 1, 200**6

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAL SUNDIATA SCOTT, | : | CIVIL ACTION NO. **1:CV-05-1574** |
| | : | |
| Plaintiff | : | (Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| DONALD VAUGHN, et al., | : | |
| | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **November 1, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                  **s/ Thomas M. Blewitt**
                                                  **THOMAS M. BLEWITT**
                                                  **United States Magistrate Judge**

**Dated: November 1, 2006**